UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL DEL TORO, <br><br> Plaintiff, <br><br> v. <br><br> SULLAIR LLC/HITACHI, <br><br> Defendant. | Case No. 3:24-CV-1002-CCB-SJF |

## OPINION AND ORDER

Before the Court is Plaintiff Michael Del Toro's Motion to Remand (ECF 8), Amended Motion to Remand (ECF 9), and Defendants Hitachi Global Air Power US, LLC and Hitachi America, LTD.'s Motion to Dismiss (ECF 6) Plaintiff's Amended Complaint (ECF 5). Based on the applicable law, facts, and arguments, Plaintiff's Amended Motion to Remand is **DENIED** and Defendants' Motion to Dismiss is **GRANTED**.

**I.   RELEVANT BACKGROUND**

For clarity, Defendant Hitachi Global Air Power US, LLC, formerly known as Sullair, LLC, will be referred to as "Sullair" and Defendant Hitachi America, LTD. will be referred to as "Hitachi." Plaintiff Michael Del Toro ("Del Toro"), an Indiana resident, was hired by Defendant Sullair in January 2022 as an Import and Compliance Specialist. (ECF 5 at 2). During Del Toro's hiring orientation, he was shown a video which depicted Sullair as a "forward-thinking, innovative company, committed to progress, employee development, and technological leadership." (*Id.*). Throughout his

employment, however, it became clear that the company culture portrayed in the video was not accurate. (*Id.* at 2-3). Del Toro was the sole employee managing claims at Sullair. (*Id.* at 2). During his employment, he improved damaged claim resolutions and saved Sullair significant costs. (*Id.*). Beginning in May 2022, Del Toro's "professional contributions were undermined by management, who refused to acknowledge his achievements or provide adequate support." (*Id.*).

Del Toro also faced harassment and aggressive oversight from Sullair employees Patty Musial ("Musial") and Mark Bradstreet ("Bradstreet"), who was Del Toro's supervisor. (*Id.* at 3). Del Toro filed multiple complaints regarding his concerns, but his efforts were either ignored or dismissed by Sullair or Hitachi management. (*Id.*). In January and March 2023, Del Toro received false write-ups, accusing him of inappropriate communication or unprofessional conduct with Bradstreet and Musial. (*Id.*). Del Toro believes these disciplinary actions were retaliatory, due to the fact they were issued after he filed his complaints. (*Id.*). In March 2023, Del Toro filed an anonymous harassment complaint which was also mishandled and then ignored. (*Id.*). At some point during his employment, a human resources manager accused Del Toro of "making his coworkers 'scared to work with him.'" (*Id.* at 4). Del Toro was ultimately terminated in April 2023 without justification. (*Id.*).

In May 2024, Del Toro filed a complaint alleging employment discrimination under Title VII of the Civil Rights Act of 1964 and Indiana state law. *Del Toro v. Sullair LLC, Hitachi Ltd.*, Cause No. 3:24-cv-471-DRL. On October 30, 2024, the Court dismissed Del Toro's case without prejudice for pleading and jurisdictional deficiencies. (*Id.*).

2

On December 3, 2024, Del Toro filed a complaint (ECF 4) and an amended complaint (ECF 5) in LaPorte County Court. A few weeks later, on December 23, 2024, Defendants removed the case from state court in LaPorte County to federal court in the Northern District of Indiana pursuant to 28 U.S.C §§ 1332, 1441, and 1446. (ECF 1). In December 2024, Defendants filed the instant motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), asserting that Plaintiff's amended complaint does not state a claim for which relief can be granted. (ECF 6). In January 2025, Plaintiff filed the instant amended motion to remand arguing that the Court lacks subject matter jurisdiction because complete diversity of citizenship does not exist. (ECF 9).

The Court must first analyze the amended motion to remand because without subject matter jurisdiction, "a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998).

## II.  AMENDED MOTION TO REMAND

### A.  Standard

A defendant may remove a case to federal court if there is federal subject matter jurisdiction. 28 U.S.C.A. § 1441(a). There are two types of subject matter jurisdiction: federal question jurisdiction and diversity jurisdiction. 28 U.S.C.A. §§ 1331, 1332. Removal based on federal question jurisdiction requires a claim arising under federal law. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 23 (2025). Removal based on diversity jurisdiction, on the other hand, requires that the parties be of complete diverse state citizenship, and the amount in controversy exceed $75,000. 28 U.S.C § 1332; *Schur*

3

*v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly." *Schur v. L.A. Weight Loss Ctrs.*, 577 F.3d 752, 758 (7th Cir. 2009). The Court should resolve any doubts regarding removal in favor of the plaintiff's choice of forum in state court. *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2014).

Plaintiff argues that removal was improper because his claims arise under Indiana law and complete diversity of citizenship does not exist. (ECF 9 at 1). Defendants do not argue that federal question jurisdiction exists, rather, they argue that removal was proper based on diversity jurisdiction. (ECF 12 at 1). Defendants thus bear the burden of establishing diversity jurisdiction, otherwise, removal was improper. *Schur*, 577 F.3d at 758.

### B. Diversity of Citizenship

Complete diverse citizenship occurs when all parties "on one side of the controversy are citizens of different states from all parties on the other side." *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941). Citizenship under federal law means domicile, which is different than residency, and corresponds to "the place one intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). Intent for diversity purposes "is a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct." *Sadat v. Mertes*, 615 F.2d

4

1176, 1181 (7th Cir. 1980) (internal quotations omitted). Of course, "statements of intent are entitled to little weight when in conflict with the facts." *Id.*

There is no one factor that determines domicile for an individual. Instead, finding an individual's domicile requires a fact-based analysis that considers things like the individual's current residence, family ties, location of belongings and personal property, place of employment, ties to the surrounding community, location of financial accounts, and tax payments. *See Sadat*, 615 F.2d at 1181; *Strabala v. Zhang*, 318 F.R.D. 81, 97 (N.D. Ill. 2016). An individual can only have one domicile at a time. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914).

Unlike an individual, a corporation is a citizen of both its state of incorporation and the state in which it maintains its "principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court has held that a corporation's principal place of business is the same as its "nerve center," or "the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). The citizenship of other business associations vary further still. Partnerships are "citizens of every state in which an individual partner is a citizen" and limited liability companies are citizens of every state in which a member is a citizen. *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 635 (7th Cir. 2021).

Here, Plaintiff is an individual and one defendant is a limited liability company and the other is a corporation. (ECF 5). Plaintiff states he is a resident of Indiana. (*Id.*) (ECF 1 at 2). Plaintiff alleges that Sullair is incorporated in Indiana with its principal place of business in Indiana; therefore, Sullair is a citizen of Indiana and diversity

5

citizenship is defeated. (ECF 9 at 2). As noted by Defendants, however, this is a misapplication of binding law. (ECF 12 at 3). Sullair is a limited liability company with a sole member. The sole member is Hitachi Industrial Holdings Americas, Inc., a Delaware corporation with its principal place of business in Illinois. (ECF 1 at 2). Therefore, since LLCs are citizens of every state in which a member is a citizen and Hitachi Industrial Holdings Americas, Inc. is a citizen of Delaware and Illinois, Sullair is a citizen of Delaware and Illinois. *Page,* 2 F.4th 630 at 635. The other defendant, Hitachi, is a corporation incorporated in New York with its principal place of business in California. (ECF 1 at 2). Thus, Plaintiff is an Indiana citizen and Defendants are citizens of Delaware, Illinois, New York, and California. Since there is no overlap between Plaintiff's state of domicile and Defendants' states of domicile, complete diversity exists.[1]

C. **Amount in Controversy**

In addition to complete diversity, diversity jurisdiction requires that the amount in controversy exceed $75,000. 28 U.S.C.A. § 1332 (West). "The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins, or in the event of removal, on the day the suit was removed." *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 510–11 (7th Cir. 2006) (internal citations removed). In his amended complaint, Plaintiff seeks "compensatory damages for lost wages, benefits, and

---

[1] Based on the record before it, the Court in *Del Toro v. Sullair LLC, Hitachi Ltd.,* Cause No. 3:24-cv-471-DRL previously held that diversity of citizenship did not exist. Based on the present record, including information regarding Sullair as an LLC and the citizenship of its sole member, the Court finds that complete diversity exists here.

emotional distress," and "punitive damages for Defendants' intentional and malicious conduct." (ECF 5 at 5). In their notice of removal, Defendants show that Plaintiff's annual salary was $55,000. (ECF 1 at 3). Since Plaintiff is seeking lost wages damages for more than a year and additional damages for benefits, emotional distress, and punitive damages, the amount in controversy does exceed $75,000. (ECF 1-3 at 5). Further, Plaintiff agrees in his response to Defendants' motion to dismiss that he "continues to seek damages exceeding $75,000." (ECF 10 at 3). Thus, the amount in controversy exceeds $75,000.

Defendants have shown that complete diversity exists and the amount in controversy exceeds $75,000. *Schur*, 577 F.3d at 758. Accordingly, the Court **DENIES** Plaintiff's Amended Motion to Remand. (ECF 9). The Court also **DENIES AS MOOT** Plaintiff's Motion to Remand. (ECF 8)

Having resolved the Amended Motion to Remand, the Court will now turn to Defendants' Motion to Dismiss.

### III.   MOTION TO DISMISS

#### A.   Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action,"

and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint therefore fails to state a claim if it does not "describe the claim in sufficient detail to give the defendant fair notice of what the … claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

When meeting this threshold, however, complaints "do not need to contain elaborate factual recitations." *Sanjuan v. Am. Bd. Of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Rather, at the motion to dismiss stage, the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* A court cannot dismiss a complaint for failure to state a claim if, taking the facts pleaded as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The court, however, is "not bound by a plaintiff's legal characterization of the facts or required to ignore facts set forth in the complaint that undermine a plaintiff's claim." *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 762–63 (N.D. Ill. 2011).

Rule 10(c) describes the type of materials that can be considered to be part of a pleading:

> A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

8

Fed. R. Civ. P. 10(c). This means that for purposes of a Rule 12 motion, a court can consider documents that are attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claims. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir.2006); *see Geinosky v. City of Chi.*, 675 F.3d 743, 745 n. 1 (7th Cir.2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.") (citations omitted).

### B. Analysis

Defendants attach several exhibits to their motion to dismiss that are referred to in the amended complaint and are central to Plaintiff's claims. Thus, the Court can consider these materials without converting the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *See Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998).

#### 1. Count I: Wrongful Termination

Plaintiff asserts that Defendants wrongfully terminated him "in retaliation for reporting workplace harassment and misconduct, violating Indiana's public policy protecting whistleblowers." (ECF 5 at 4). Federal law does not provide a claim for wrongful termination, rather, it is a theory for relief under state law. Indiana law recognizes two forms of employment, employment for a "definite or ascertainable term" and employment at-will. *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). If there is an employment contract for a specified, definite term, and the employer has not "reserved the right to terminate the employment before the

9

conclusion of the contract, the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement." *Id.* If there is no ascertainable term of employment, then the employment is at will and the "employment may be terminated by either party at will, with or without a reason." *Harris v. Brewer*, 49 N.E.3d 632, 639 (Ind. Ct. App. 2015). There is a strong presumption that employment in Indiana is at-will. *Id.*

Indiana recognizes three exceptions to the employment-at-will doctrine: "(1) if an employee establishes that "adequate independent consideration" supports the employment contract; (2) if a clear statutory expression of a right or duty is contravened; and (3) if the doctrine of promissory estoppel applies." *Id.* (citing *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 718 (Ind. 1997)). If an employee shows adequate independent consideration, the Court will generally "conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause." *Orr*, 689 N.E.2d at 718. Moving to a new location or surrendering a previous job is not enough to establish adequate independent consideration. *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 176 (Ind. 1996). Indiana recognizes the second exception, the so-called public policy exception, when employees are fired after filing a workers' compensation claim or for refusing to commit illegal acts. *Orr*, 689 N.E.2d at 718; *See also Frampton v. Cent. Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 428 (1973). Finally, for the third exception, promissory estoppel, employees must show that "the employer made a promise to the employee; that the employee relied on that promise to his detriment; and that the promise otherwise fits within the Restatement test for

10

promissory estoppel." *Id.* Overall, given the strength of the employment at-will presumption, the Indiana Supreme Court is hesitant to broaden the three exceptions to the employment at-will doctrine. *Wior*, 669 N.E.2d at 177–78.

Here, there was no employment contract between Plaintiff and Defendants. Plaintiff was employed on an at-will basis, meaning unless an exception to the employment-at-will doctrine applies, Plaintiff cannot bring a claim for wrongful termination under Indiana law. *Brewer*, 49 N.E.3d at 639. As pointed out by Defendants, however, Plaintiff "has not alleged any facts or claims under any exception to the employment at-will doctrine." (ECF 7 at 2). Plaintiff argues that Defendants terminated him in retaliation for reporting harassment and filing complaints against other employees. (ECF 5 at 3, 4). Plaintiff does not allege any facts suggesting that there was adequate independent consideration to support an employment contract, so the first exception to the employment-at-will doctrine does not apply.

Plaintiff seems to invoke the public policy exception when he argues that his termination violated "Indiana's public policy protecting whistleblowers." (*Id.* at 4). Indiana, however, recognizes the public policy exception for workers' compensation retaliation or when employees refuse to commit illegal acts and are terminated because of it. *Orr*, 689 N.E.2d at 718. Neither situation applies here[2], so Plaintiff would be urging the Court to expand the exceptions to the employment at-will doctrine, which, as Indiana courts have made clear, is to be avoided. *Wior,* 669 N.E.2d at 177–78.

---

[2] The amended complaint is devoid of facts alleging that Plaintiff was fired for pursuing a workers' compensation claim or for refusing to commit an illegal act.

Plaintiff does not argue that promissory estoppel applies here, but if he were to make that argument, it too would fail. Plaintiff describes a video he was shown as a new hire portraying Sullair as "forward-thinking and innovative." (ECF 5 at 2). When he started working, however, he claims that this culture did not exist and the video was a misrepresentation that added to the "broader pattern of deception and lack of transparency at Sullair." (*Id.* at 3). The video alone would not be enough to establish a promise made by Defendants to Plaintiff. Further, the Indiana Supreme Court has explicitly declined to construe an employee handbook as a valid unilateral contract absent three criteria outlined in *Duldulao:*

> (1) the language of the employee handbook must contain a promise clear enough that an employee would reasonably believe that an offer had been made; (2) the employee handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the employee handbook.

*Orr*, 689 N.E.2d at 720 (citing *Duldulao v. Saint Mary of Nazareth Hosp. Center*, 505 N.E.2d 314, 318 (1987)). Defendants provide several excerpts from the employee handbook provided to Plaintiff illustrating that the handbook does not create a contract of employment nor alter the at-will nature of his employment. (ECF 7 at 3, 4). Plaintiff does not offer argument to the contrary or allege that he relied on any promise or offer contained within the handbook. Thus, the third exception to the employment at-will doctrine would also not be applicable here.

None of the three exceptions to the employment at-will doctrine apply here. Absent the application of one of the exceptions, employment at-will "may be

terminated by either party at will, with or without a reason." *Brewer*, 49 N.E.3d at 639. Plaintiff thus fails to plead sufficient facts to push his wrongful termination claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, Defendants' motion to dismiss for failure to state a claim is GRANTED as to Count I.

### 2. Count II: Defamation

Plaintiff also asserts that an agent of Defendants made a false and defamatory statement about him, namely that other employees "feared working with him." (ECF 5 at 4). There are two types of defamatory communications: defamation per se and defamation *per quod. Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). A communication is defamatory per se "if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Id.* All other communications that are defamatory are defamatory *per quod.* To bring a claim of either kind of defamation, a plaintiff must show that there was a communication with defamatory imputation, malice, publication, and damages. *Schrader v. Eli Lilly and Co.,* 639 N.E.2d 258, 261 (Ind.1994). Additionally, "[a]ny statement actionable for defamation must not only be defamatory in nature, but also false." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014). The key difference between defamation per se and *per quod* is that damages are presumed for defamation per se, while a plaintiff must show damages for defamation *per quod. Tanoos,* 865 N.E.2d at 596.

Here, the allegedly defamatory statement was that other employees "feared working with" Plaintiff. (ECF 5 at 4). Plaintiff must show that there was a false

13

communication with defamatory imputation, the statement was made with malice, the statement was published, and that he suffered damages. *Eli Lilly,* 639 N.E.2d at 261. The statement does not impute criminal conduct, a loathsome disease, or sexual misconduct. Plaintiff did not argue that the words constituted a statement that imputed misconduct in his profession or occupation, but this is likely the category he intended his claim to fall into for the first element, a communication with defamatory imputation. To establish defamation per se, "it is not enough that the statement carry with it one of those four defamatory imputations; rather, it must constitute 'a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious character can be dispensed with.'" *In re Indiana Newspapers Inc.*, 963 N.E.2d 534, 549–50 (Ind. Ct. App. 2012) (quoting *Moore v. University of Notre Dame*, 968 F. Supp. 1330, 1334 (N.D. Ind. 1997)). The statement that other employees were afraid to work with Plaintiff is not "so obviously and naturally harmful that proof of [the words'] injurious character can be dispensed with." *Moore*, 968 F. Supp. at 1334; *See Northern Ind. Pub. Serv. Co. v. Dabagia,* 721 N.E.2d 294, 303 (Ind.Ct.App.1999) (holding that while contemptible, even racial slurs or epithets "are generally not defamatory in the absence of particular circumstances that make them so"). Plaintiff's claim for defamation fails because he did not argue or allege facts to show the statement had defamatory imputations.

Even if Plaintiff could show that the statement did rise to the level that proof of its injurious character could be dispensed with, his defamation claim still fails because there was no publication. Plaintiff alleges a human resources manager made the

14

statement to him. (ECF 5 at 4). "In the law of defamation, the word "published" just means that the defamatory statement was made to someone other than the plaintiff." *Kamelgard v. Macura*, 585 F.3d 334, 342 (7th Cir. 2009). Plaintiff has not alleged that the manager made the statement to anyone else, or that anyone else even heard the manager make the statement. Thus, Plaintiff has failed to allege facts to show another essential element of a defamation claim. Plaintiff's defamation claim did not contain sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678. Therefore, Defendants' motion to dismiss is GRANTED as to Count II.

### 3. Count III: Breach of Contract

Finally, Plaintiff argues that Defendants breached the implied contractual obligations owed to him when they failed to follow their own harassment reporting and investigation policies. (ECF 5 at 5). For a breach of contract claim in Indiana, a plaintiff must show there was a contract that the defendant breached, "the breach was a substantial factor contributing to the damages, and that the damages were foreseeable at the time the contract was entered into." *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021). A claim for breach of implied contract has the same elements as breach of contract, however, an implied contract "refers to the class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words." *McCart v. Chief Exec. Officer in Charge, Indep. Fed. Credit Union*, 652 N.E.2d 80, 85 (Ind. Ct. App. 1995). There is no general rule outlining what facts are required to prove the existence of an implied contract, which is a matter of fact. *Wilhoite v. Beck*, 230 N.E.2d 616, 622-23 (1967).

Plaintiff's claim for breach of contract fails on the first prong. As discussed above, Plaintiff was an at-will employee without an employment contract. Plaintiff tries to argue the existence of an implied contract, but does not allege any facts to indicate where or when the "implied contractual obligations" owed to him by Defendants originated. (*Id.*). Even if the employee handbook is the basis for the alleged implied contract, Plaintiff's claim of breach of contract still fails. The Indiana Supreme Court outlined three criteria, from *Duldulao,* necessary to construe an employee handbook as a valid unilateral contract. The language of the employee handbook must contain "a promise clear enough that an employee would reasonably believe that an offer had been made," the handbook must be disseminated in such a way that the employee is aware of its contents and reasonably thinks it is an offer, and finally, the employee must "accept the offer by commencing or continuing work after learning of the terms of the employee handbook." *Orr*, 689 N.E.2d at 720. Plaintiff does not point to specific provisions in the handbook suggesting that there was a clear promise that he believed constituted an offer. He also does not allege that he thought any part of the handbook was an offer, or that he accepted the offer by continuing to work after he reviewed the handbook. Further, the handbook states several times that it does not create a contract of employment, a factor persuasive to the court in *Orr* when they held that "an employee handbook bearing or accompanied by such disclaimers . . . generally, as a matter of law, does not create a unilateral contract." *Orr*, 689 N.E.2d at 721. (ECF 7 at 3, 4). Plaintiff does not allege facts suggesting otherwise or present any argument as to why the Court should conclude an implied contract existed. Thus, Plaintiff has not

16

alleged enough facts to plausibly suggest an entitlement to relief on a breach of contract theory. *McCauley*, 671 F.3d at 616. Therefore, Defendants' motion to dismiss is GRANTED as to Count III.

### IV. CONCLUSION

For the reasons discussed above, Plaintiff's Amended Motion to Remand is **DENIED** (ECF 9), Plaintiff's Motion to Remand is **DISMISSED AS MOOT** (ECF 8), and Defendants' Motion to Dismiss is **GRANTED** (ECF 6).

SO ORDERED on June 12, 2025.

                                              /s/*Cristal C. Brisco*
                                              CRISTAL C. BRISCO, JUDGE
                                              UNITED STATES DISTRICT COURT